■ In the Matter of LYNNE WILSON, Respondent, v WILLIAM BRATTON, as Police Commissioner of the City of New York, et al., Appellants. [699 NYS2d 29] —Order and judgment (one paper), Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered on or about April 14, 1998, which confirmed a Referee's report, granted the petition, and ordered petitioner reinstated to the position of police officer, with back pay to May 11, 1995, unanimously reversed, on the law and the facts, without costs, the Referee's report rejected, the petition denied and the proceeding dismissed.

Petitioner, a New York City police officer who was on dismissal probation at the time of the incidents leading to her termination, alleged that she was terminated in bad faith, and the Referee so found. The IAS Court confirmed the report. However, there is no support in the record for this conclusion.

On December 1, 1993, petitioner was placed on dismissal probation after she was found unfit for duty because she was intoxicated. Since joining the police force in 1980, she had accumulated a prior disciplinary record which included the commission of an assault while on duty, two incidents of being out of residence while on sick report, and a pattern of chronic lateness. Though she could have been terminated for the incident involving the intoxication, she was placed on dismissal probation for one year. She signed an agreement acknowledging that "[d]uring this period the Police Commissioner may impose the penalty of Dismissal at any time without further proceedings, pursuant to Administrative Code Section 14-115 (d)".

The one-year duration of petitioner's probation was extended during the period she was on restricted duty, which encompassed all periods relevant to this action. Between April 1994

and March 1995, her commanding officer, Captain Jeffrey Mishula, brought at least five "command disciplines" against her. A command discipline is brought when an officer is late three times within a three-month period. Thus, petitioner was apparently late for duty at least 15 times in the last year of her probation. Her commanding officer warned her that continued tardiness could lead to her dismissal.

On March 7, 1995, petitioner was at least an hour late for her appointment with Dr. Linda Intranuovo of the Psychological Services Unit. Petitioner alleged that she got lost, though this was not her first visit to the office. According to the doctor, petitioner falsely signed in as having arrived at 11:00 A.M., although she really arrived at 11:14 A.M. Petitioner now denies arriving at 11:14 A.M. or intentionally recording a false time, despite having corrected the doctor's sign-in book when the alleged error was called to her attention. Significantly, though, petitioner does not dispute that she arrived no sooner than 11:00 A.M. for a 10:00 A.M. appointment.

Because of this final lateness incident, petitioner was terminated without a hearing. She brought the instant CPLR article 78 petition, claiming that the Police Department had acted in bad faith by agreeing to Captain Mishula's recommendation of dismissal without independently investigating the facts.

The Referee concluded that petitioner's superiors showed bad faith when they failed to question the truth or seriousness of the charges and specifications prepared by Captain Mishula. The court, in confirming the report, also found it significant that no formal charges were served on petitioner before her summary termination, notwithstanding the uncontroverted evidence that it was Police Department practice not to serve charges on officers who were on dismissal probation. The court and the Referee inexplicably ignored petitioner's tacit admission that she was an hour late to the appointment, focusing instead on the disputed 14 minutes. Finally, the court improperly considered testimony from petitioner's unemployment insurance hearing, which is not admissible in court proceedings (Labor Law § 537 [1]; *Matter of Beacham v Brown*, 215 AD2d 334, 335, *lv denied* 87 NY2d 801).

The result was based on a clear misreading of the record, which shows that respondents had ample grounds to terminate petitioner and gave her numerous opportunities to improve her performance. Absent bad faith, a municipal agency may summarily terminate a probationary employee for any reason (*Matter of Beacham v Brown, supra*), as petitioner acknowl-

edged when she signed the agreement to dismissal probation in 1993. Lateness is sufficient grounds to terminate a probationer's employment (*Matter of Butler v Abate*, 204 AD2d 171, 172), particularly where, as here, petitioner's late arrival at Dr. Intranuovo's office was merely the last in a long series of such episodes.

Petitioner claims that the Police Department should have investigated the incident further before terminating her based on Captain Mishula's assertions. However, there was nothing else to investigate. Even leaving aside the contested 14 extra minutes and petitioner's allegedly false entry in Dr. Intranuovo's sign-in book, there is no denying that petitioner was an hour late for the appointment. Petitioner's previous citations for lateness and her other disciplinary infractions were a matter of record with the Department, lending credibility to Captain Mishula's statements. Thus, the Department was reasonably entitled to rely on petitioner's history in deciding to follow Captain Mishula's recommendations (*see, Matter of Rainey v McGuire*, 111 AD2d 616, 619).

As petitioner herself agreed by signing the 1993 agreement, she could have been fired "at any time without further proceedings, pursuant to Administrative Code Section 14-115 (d)". Having failed to fulfill her responsibilities after being given numerous chances by respondents, she has no basis to argue that she was terminated in bad faith. Concur—Sullivan, J. P., Rosenberger, Lerner, Rubin and Andrias, JJ.